STATE v. BARLOW

[102 N.C. App. 71 (1991)]

———————————

STATE OF NORTH CAROLINA v. MARY ANNA BARLOW

No. 904SC255

(Filed 5 March 1991)

1. **Criminal Law § 82.2 (NCI3d)— statement to hospital employee — privilege — statement not suppressed — proper exercise of discretion by trial court**

    The trial court did not err in failing to suppress statements made by defendant to a hospital employee concerning a murder allegedly committed by defendant where comments by the judge in rendering his decision indicated that the court recognized its discretionary authority to allow disclosure of the statements and exercised that authority, and there was no evidence of abuse of that discretion. N.C.G.S. § 8-53.

    **Am Jur 2d, Witnesses § 251.**

STATE v. BARLOW

[102 N.C. App. 71 (1991)]

**2. Criminal Law § 76.5 (NCI3d)— confessions without Miranda warnings — subsequent confession — fruit of poisonous tree — insufficiency of trial court's findings**

The trial court erred in failing to suppress a videotaped confession of defendant as the "fruit of the poisonous tree" without making findings and conclusions as to whether a prior confession was voluntary, and, if involuntary, whether the videotaped confession was made under same prior influence.

**Am Jur 2d, Evidence §§ 531, 555.**

**The progeny of Miranda v. Arizona in the Supreme Court. 46 L.Ed.2d 903.**

APPEAL by defendant from judgment entered 17 November 1989 in ONSLOW County Superior Court by *Judge Henry L. Stevens, III.* Heard in the Court of Appeals 16 January 1991.

Defendant was arrested and charged with murder. She made a pretrial motion to suppress various "statements, admissions, and confessions." At the suppression hearing, the State's evidence tended to show that defendant brought her sister to Brynn Marr Hospital, a psychiatric facility, on 14 April 1989. She took her sister to a treatment facility recommended by Pamela Chance, a registered nurse and helpline worker who performed intake duties, and then returned to speak about her own problems. She complained of depression, lack of motivation, and financial problems, and claimed to have killed a man. Chance then called the police. Defendant did not attempt to leave.

Officer Kirk Newkirk was dispatched to the hospital. He asked defendant whether she would come to the police station to talk about what she had told Chance, and she agreed. He handcuffed her outside of the hospital, and drove her to the police station. He informed her that she was not under arrest, and that she was being handcuffed because of a department policy regarding transporting persons in police cars. He removed the handcuffs once they got inside the station. He did not inform her of her rights pursuant to *Miranda*, but he did not take any statement from her.

Defendant was then brought into Detective June Gelling's office. She was informed that she was not under arrest and could leave at any time. One of the doors leading into the office was open. Defendant was asked to discuss what she had spoken of

at the hospital, and she responded that she wished to talk about it because she could no longer live with the guilt. Defendant then spoke with the detective for over one hour, and wrote out a statement which included the following language:

> I do hereby make this voluntary statement of my own free will and accord to Det. J. Gelling of the Jacksonville Police Department.

> I make this statement in a sound and sober mind. No threats have been made to me nor any promises of a reward to obtain this statement. I have been informed that this statement can be used against me in the Court of Law.

Detective Gelling did not, however, give her the *Miranda* warnings. After the interview, defendant was allowed to leave, and Detective Gelling informed her that she would be in touch.

At approximately 2:00 p.m. on 17 April 1989, Detective Gelling and another officer drove to defendant's residence. Defendant agreed to come back to the police department. She rode in the police car, but was not told that she was under arrest. She agreed to be interviewed by Deputy Chief Delma Collins. Deputy Chief Collins also informed her that at that moment she was not under arrest, and they talked generally about the killing. Defendant agreed to have a statement videotaped. She was then given the *Miranda* warnings, arrested, and made the videotaped confession.

Defendant presented evidence tending to show that Chance did not tell her she was going to call the police until after she had done so, and that defendant knew that the front door was locked and someone would have to let her out if she wished to leave. Officer Kirk Newkirk arrived in his police uniform, and she agreed to go with him to the police station. He then handcuffed her in the lobby and took her to the police station in a patrol car. Officer Newkirk explained that police policy required him to handcuff anyone who rode in the police car. She waited for Detective Gelling in an interview room for 45 minutes with Officer Newkirk, and was escorted by a policewoman when she asked to go to the restroom.

While Detective Gelling interviewed defendant, she was never informed that she was free to go or that she wasn't under arrest. When Detective Gelling returned on 17 April 1989, she did not answer defendant's question about whether she would be returning

soon, but defendant agreed to go with the officers. She answered questions about the killing, and then gave the videotaped confession. She was informed of and understood her rights under *Miranda* at the time she was videotaped, but was not informed that previous statements could not be used against her.

The trial court entered an order granting in part defendant's motion to suppress, but refusing to suppress the videotaped confession or the statements made to the intake person at Brynn Marr Hospital. Defendant then pled no contest to the lesser included offense of second degree murder and was sentenced to twelve years in prison. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General James Wallace, Jr., for the State.*

*Joseph E. Stroud, Jr. for defendant-appellant.*

WELLS, Judge.

Defendant brings forward seventeen assignments of error from the order of the trial court. We have reviewed these assignments and view the two crucial questions for our consideration to be whether the trial court erred in failing to suppress the statements made by defendant to the hospital employee, and whether the trial court erred in failing to suppress the videotaped confession. We reverse.

[1] N.C. Gen. Stat. § 8-53 provides, in pertinent part:

No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon, and no such information shall be considered public records. . . . Any resident or presiding judge in the district, either at the trial or prior thereto . . . may, subject to G.S. 8-53.6, compel disclosure if in his opinion disclosure is necessary to a proper administration of justice.

Pam Chance was a registered nurse working at the hospital. Defendant contends that the trial court erred in making findings and concluding that her statements to Chance were not privileged. Assuming *arguendo* that these statements were privileged, this

**STATE v. BARLOW**

[102 N.C. App. 71 (1991)]

privilege is qualified. N.C. Gen. Stat. § 8-53 affords trial courts wide discretion in compelling disclosure if there is a finding that such disclosure is necessary for the proper administration of justice. *State v. Efird*, 309 N.C. 802, 309 S.E.2d 228 (1983); *Sims v. Charlotte Liberty Mut. Ins. Co.*, 257 N.C. 32, 125 S.E.2d 326 (1962). Trial courts should not hesitate to require disclosure where it appears to them to be necessary in order that truth be known and justice done. *Sims, supra.* N.C. Gen. Stat. § 8-53.3, creating a psychologist-patient privilege, grants the same discretion to the trial court.

The trial court stated in its order that it "concludes as a matter of law that the proper administration of justice requires the disclosure of this statement and that any privilege should be waived by the Court in accordance with N.C.G.S. 8-53 *et seq.*" The general rule is that where a court is given discretion, but "rules as a matter of law, without the exercise of discretion, the offended party is entitled to have the proposition reconsidered and passed upon as a discretionary matter." *Capps v. Lynch*, 253 N.C. 18, 116 S.E.2d 137 (1960). Despite the language of the order, the record indicates that the trial court was not under any mistaken impression that it was required to rule a particular way as a matter of law. *See Lemons v. Old Hickory Council, Boy Scouts of America*, 322 N.C. 271, 367 S.E.2d 655, *reh'g denied*, 322 N.C. 610, 370 S.E.2d 247 (1988). The judge made the following comments in rendering his decision:

> I don't see how that's a privilege. She wasn't a patient, wasn't being treated, and just came out there. But even if there was one, in 1983, under the statutes of the legislature, this state determined what privileges or alleged privileges that the superior court judge could, in the interest of the administration of justice, and those are the words, could dissolve whenever the court thought that justice would be served in doing so.

> And so, this court holds that it does not feel that in relationship on this first phase in her conversation to this lady, Nurse Chance, that there was a privilege. But if it is, the court's going to dissolve it because it finds in the interest of justice to do so. There would be no reason not to.

We hold that this language indicates that the trial court recognized its discretionary authority, and exercised it. Defendant has demonstrated no abuse of this discretion, and we perceive none.

STATE v. BARLOW

[102 N.C. App. 71 (1991)]

**[2]** Defendant next contends that the trial court erred in failing to suppress the videotaped confession as the "fruit of the poisonous tree." The trial court concluded that the doctrine did not apply since defendant had already confessed the crime to Chance. We disagree. Regardless of whether an individual has confessed to a third party, a previous confession to a police officer may have some effect on a decision regarding whether to confess again. The proper analysis is set out in *State v. Edgerton*, 86 N.C. App. 329, 357 S.E.2d 399 (1987):

> When evidence before the court tends to show a defendant made a confession prior to the confession to which he objects, the court is required to determine whether the defendant made a prior confession and whether it was voluntary. *State v. Silver*, 286 N.C. 709, 213 S.E.2d 247 (1975). If the court finds there was a prior confession and it was not voluntary, then the court must determine whether the second confession was made under the "same prior influence" which made the first confession involuntary. *State v. Edwards*, 284 N.C. 76, 199 S.E.2d 459 (1973); *State v. Edwards*, 282 N.C. 201, 192 S.E.2d 304 (1972); *State v. Fox*, 274 N.C. 277, 163 S.E.2d 492 (1968). The State must overcome the presumption of "same prior influence" by showing something akin to surrendering the signed written confession to the defendant or informing him that his prior confession will not be used against him. *State v. Edwards*, 284 N.C. at 79, 199 S.E.2d at 461. When there is conflicting evidence on any of the issues, the trial court is required to make findings; although the better practice is to always make findings. *State v. Biggs*, 289 N.C. 522, 529-30, 223 S.E.2d 371, 376 (1976).

This analysis is consistent with the principles set out in *Oregon v. Elstad*, 470 U.S. 298, 84 L.Ed.2d 222 (1985). The fruit of the poisonous tree analysis presupposes the existence of a constitutional violation. *Id.* A failure to Mirandaize an individual is not, in and of itself such a violation. *Id.* The trial court failed to make the necessary findings and conclusions for us to determine whether the three separate statements to the police officers were simply not properly Mirandaized, or whether any of defendant's constitutional rights were violated. With regard to defendant's statements to Deputy Chief Collins, we are unable to determine adequately whether they in fact constituted a confession. Therefore, we must reverse.

The defendant's plea of no contest is stricken, the judgment entered is vacated, and the cause is remanded to the superior court for further proceedings consistent with this opinion. *See State v. Forrest*, 41 N.C. App. 160, 254 S.E.2d 194 (1979).

Reversed and remanded.

Chief Judge HEDRICK and Judge ORR concur.