STATE OF NORTH CAROLINA v. MARY ANNA BARLOW

No. 146A91

(Filed 7 November 1991)

**1. Criminal Law § 76.10 (NCI3d) — voluntariness of confession — question of law — appellate review**

In determining whether a confession is voluntary, the trial judge must make findings of fact resolving all material conflicts in the evidence. Whether a trial court's findings support a conclusion that the confession was voluntarily made is, however, a question of law reviewable on appeal.

**Am Jur 2d, Evidence § 590.**

**2. Criminal Law § 75.5 (NCI3d) — confessions without Miranda warnings — admissibility of subsequent confession after warnings**

Assuming that defendant was entitled to Miranda warnings prior to making her first three statements to police officers, these three statements without the benefit of Miranda warnings were not coerced or made under circumstances calculated to undermine defendant's exercise of her free will and therefore did not taint the subsequent videotaped confession to murder by defendant following proper Miranda warnings where uncontradicted evidence showed that defendant confessed to the killing because she could no longer "live with the guilt," and evidence supported findings by the trial court that defendant, while at a hospital, agreed to go to the police station with an officer; the officer explained to defendant that she was not under arrest; once at the station, defendant was advised by a detective that she had a right to leave the police

———

STATE v. BARLOW

[330 N.C. 133 (1991)]

department and that she was not under arrest for any crime; after making an oral statement to the detective, defendant then detailed the events in a written statement on a form including language that the statement was made voluntarily and could be used against her in court; defendant then returned to her home and enjoyed complete liberty until she agreed to return to the police station three days later; defendant then made another statement admitting the killing and agreed to have her statement recorded on videotape; and defendant was given the Miranda warnings before her fourth statement was videotaped.

**Am Jur 2d, Evidence §§ 555-557.**

**Admissibility of pretrial confession in criminal case— Supreme Court cases. 1 L. Ed. 2d 1735; 4 L. Ed. 2d 1833; 12 L. Ed. 2d 1340; 16 L. Ed. 2d 1294; 22 L. Ed. 2d 872.**

APPEAL by the State as of right pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 103 N.C. App. 276, 405 S.E.2d 372 (1991), vacating the judgment of Stevens, J., entered 17 November 1989 in Superior Court, ONSLOW County, and remanding the case to that court for further proceedings. Heard in the Supreme Court 14 October 1991.

Lacy H. Thornburg, Attorney General, by James Wallace, Jr., and Charles M. Hensey, Special Deputy Attorneys General, for the State-appellant.

Joseph E. Stroud, Jr., for defendant-appellee.

MEYER, Justice.

The sole issue presented on this appeal is whether the Fifth and Fourteenth Amendments of the United States Constitution mandated suppression of defendant's videotaped confession, made after she waived her Miranda rights, solely because the confession was preceded by incriminating statements made by defendant without the benefit of Miranda warnings. Assuming that the preceding statements were obtained in violation of the prophylactic rule established in Miranda, we conclude that the un-Mirandized statements were not coerced in violation of defendant's Fifth Amendment right against compulsory self-incrimination. Therefore, the trial court properly denied defendant's motion to suppress the subse-

quent confession given by defendant after she was properly Mirandized.

At 7:30 p.m., 14 April 1989, defendant accompanied her sister-in-law to Brynn Marr Hospital, a psychiatric facility located in Jacksonville, North Carolina. Upon entering the hospital, defendant met Ms. Pamela Chance, a registered nurse who was working with the hospital's telephone help-line. Defendant told Chance that her sister-in-law was having a problem. Upon Chance's recommendation, defendant took her sister-in-law to a detoxification facility.

Around 8:00 p.m., defendant returned to Brynn Marr to speak with Chance about defendant's own problems. Defendant, who was attending college at Coastal Carolina Community College, indicated that she lacked initiative in school, that she was having financial difficulties, that she did not want to work, and that she was concerned about losing government funding of her college education. Chance continued to talk with defendant to find out whether defendant was depressed and having thoughts of hurting herself or someone else. Defendant stated that she had hurt someone else, that she had killed a man by smothering him with a towel when he was very drunk and unable to resist. After speaking with her supervisor, Chance called the police. At no point did defendant attempt to leave.

Officer Kirk Newkirk, a Jacksonville police officer, arrived at the hospital shortly after Chance called the police. He spoke with Chance, who advised him of defendant's comments. Officer Newkirk telephoned his supervisor at the police station and then asked defendant whether she would accompany him to the police station "with the information she was giving." Defendant agreed. Officer Newkirk explained to defendant that she was not under arrest but that, due to departmental policies, he would have to handcuff her in order to transport her to the police station. Officer Newkirk handcuffed defendant, placed her in the front seat of the car, and drove to the police station. On the way to the station, defendant and Officer Newkirk discussed the fact that the police department's policy required that all persons riding in the police car must be handcuffed.

After arriving at the police station, Officer Newkirk removed the handcuffs and escorted defendant to an interview room, where he waited with defendant until Detective June Gelling arrived. While waiting for Detective Gelling, Officer Newkirk did not ques-

tion defendant about her statements, and defendant did not request to leave the station. Defendant did ask to go to the rest room, at which time Officer Newkirk found a female police officer to accompany defendant to the rest room.

Detective Gelling arrived approximately thirty to forty-five minutes later. Officer Newkirk left the station, and defendant was escorted to Detective Gelling's office. Detective Gelling told defendant that she was not under arrest and that she was free to leave at any time. Without giving any *Miranda* warnings, Detective Gelling began questioning defendant about the comments she had made to Chance at the hospital. Defendant spoke with Detective Gelling for over an hour. Defendant admitted that she had killed General Jackson Kellum on 7 July 1985 (defendant's first statement). At Detective Gelling's request, defendant made and signed a written statement detailing the events leading up to and resulting in the death of General Kellum (defendant's second statement). In the written statement, defendant indicated:

> I picked up a towel (I think it was brown) folded to the size of [General Kellum's] face. I covered his face and tightly held it down on his face. He started to struggle but I held it more tightly. When he stopped struggling, I looked at the watch on my right wrist. It was 3:17 p.m. but I held the towel down on his face another 5 mins. to make [sic] he was dead. . . . I have never told anyone anything about [killing General Kellum] until now because I was scared but now I realize that I can't live with the guilt.

After the interview, Detective Gelling informed defendant that she would be in touch, and defendant left the station.

At approximately 2:00 p.m. on 17 April 1989, Detective Gelling and Detective Shingleton, another detective of the Jacksonville Police Department, drove to defendant's residence and asked defendant if she would accompany them to the police station. Defendant agreed, and the three drove to the station. Upon arrival at the Jacksonville Police Department, defendant was introduced to Deputy Chief Delma Collins. Without the benefit of *Miranda* warnings, defendant made another oral statement, again admitting that she killed General Kellum (defendant's third statement).

Deputy Chief Collins then asked defendant if she would agree to have her statement recorded on videotape. Defendant agreed.

Detective Gelling and Deputy Chief Collins then escorted defendant to the station's videotape facilities. Prior to questioning, defendant was properly advised of her *Miranda* rights, which she waived orally, in a signed writing and on videotape. Upon questioning initiated by Deputy Chief Collins, defendant then made an inculpatory statement that was consistent with the previous statements, confessing that she killed General Kellum by means of smothering him with a towel (defendant's videotaped confession). Immediately after the videotaped interview, defendant was arrested and charged with first-degree murder.

Prior to trial, defendant filed a motion to suppress her statements made to Chance and to the police. After conducting a *voir dire* hearing, the trial court entered an order granting in part and denying in part defendant's motion to suppress. Specifically, the trial court concluded that defendant's statement to Chance was not subject to physician-patient, counselor-client, or social worker-client privilege and thus was admissible at trial. The trial court suppressed defendant's first three statements to the police—the oral and written statements made on 14 April 1989 and the first oral statement made on 17 April 1989—after finding that defendant was in custody and that *Miranda* warnings were not administered prior to these confessions. The trial court refused to suppress the videotaped confession, concluding that the videotaped confession was not tainted by the prior statements and that the videotaped confession "relates back to and is consistent with the statement made to Ms. Chance."

Following entry of the trial court's judgment, defendant filed a notice of appeal from the denial of defendant's suppression motion. Thereafter, defendant entered a plea of no contest to the lesser included offense of second-degree murder and was sentenced to twelve years' imprisonment.

On appeal, the Court of Appeals reversed and remanded this case to the trial court "to make the necessary findings and conclusions for [the Court of Appeals] to determine whether [each of defendant's first] . . . three . . . statements to the police officers were simply not properly Mirandaized [sic], or whether any of defendant's constitutional rights were violated." *State v. Barlow*, 102 N.C. App. 71, 76, 401 S.E.2d 368, 371 (1991). In response to a petition for discretionary review filed by the State, this Court, by order dated 2 May 1991, remanded this case to the Court of

STATE v. BARLOW

[330 N.C. 133 (1991)]

Appeals for reconsideration in light of our recent opinion in *State v. Edgerton*, 328 N.C. 319, 401 S.E.2d 351 (1991). *State v. Barlow*, 328 N.C. 733, 404 S.E.2d 872 (1991). On remand, the majority of the Court of Appeals, with Judge Orr dissenting, reaffirmed its previous decision, holding:

> [T]he trial court was obliged to make a determination as to whether any of the three statements complained of were the result of a constitutional violation. While portions of the trial court's order would tend to indicate that the trial court believed the oral and written statements made to Detective Gelling were in fact voluntary, we continue to adhere to our original holding that this case must be remanded for further proceedings in light of the proper legal framework. The trial court's order under review here also does not contain sufficient findings for us to determine whether the trial court considered the oral statement made to Deputy Chief Collins (the third statement complained of) to even be a confession.

*State v. Barlow*, 103 N.C. App. 276, 278, 405 S.E.2d 372, 373-74 (1991).

The State contends that the Court of Appeals erred in reversing the trial court's judgment denying defendant's motion to suppress the videotaped confession. We agree and therefore reverse the decision of the Court of Appeals.

In *Oregon v. Elstad*, 470 U.S. 298, 84 L. Ed. 2d 222 (1985), the United States Supreme Court set forth the test for determining whether the Fifth Amendment requires suppression of a confession that is the fruit of an earlier statement obtained in violation of the prophylactic rule established in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, *reh'g denied sub nom. California v. Stewart*, 385 U.S. 890, 17 L. Ed. 2d 121 (1966). Like the case *sub judice*, *Elstad* involved a situation wherein the defendant made multiple incriminating statements. In *Elstad*, the defendant made one incriminating statement without benefit of *Miranda* warnings and subsequently made another statement after having been fully advised of and having waived his *Miranda* rights. Reasoning that "[t]he *Miranda* exclusionary rule . . . sweeps more broadly than the Fifth Amendment," the Court concluded that a confession obtained in violation of *Miranda* does not require that the fruits of the statement "be discarded as inherently tainted." *Oregon v. Elstad*, 470 U.S. at 306-07, 84 L. Ed. 2d at 230-31. The Court explained:

STATE v. BARLOW

[330 N.C. 133 (1991)]

It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any *actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will,* so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

*Id.* at 309, 84 L. Ed. 2d at 232 (emphasis added). Thus, it is only where an earlier inadmissible confession is coerced or given under circumstances calculated to undermine the suspect's ability to exercise his or her free will that the Fifth Amendment mandates that fruits of the confession, such as the videotaped confession in this case, must be suppressed.

[1] We note at the outset that the Court of Appeals erred in remanding this case to the trial court for further findings. In *State v. Edgerton*, 86 N.C. App. 329, 357 S.E.2d 399 (1987), *rev'd*, 328 N.C. 319, 401 S.E.2d 351 (1991), the Court of Appeals, deciding a similar case, granted the defendant a new trial based on the fact that the trial court failed to "make findings of fact and determine if the prior confession was voluntary or involuntary and, if involuntary, whether the second confession was made under the same prior influence." *State v. Edgerton*, 86 N.C. App. at 335, 357 S.E.2d at 403. In an opinion filed 7 March 1991, we reversed the Court of Appeals, stating that "[e]ven if the defendant was in custody when questioned . . . there was no evidence that the questioning was coercive." *State v. Edgerton*, 328 N.C. at 321, 401 S.E.2d at 352. Implicit in our opinion in *Edgerton* was the conclusion that the question of the voluntariness of a confession is one of law, not of fact. *Accord State v. Richardson*, 316 N.C. 594, 600-01, 342 S.E.2d 823, 828 (1986). It is true that a trial judge, in determining whether a confession is voluntary, must make findings of fact resolving all material conflicts in the evidence. *Id.* at 600, 342 S.E.2d at 828. Whether a trial court's findings support a conclusion that the confession was voluntarily made is, however, a question of law properly reviewable on appeal. *Id.* at 600-01, 342 S.E.2d at 828.

STATE v. BARLOW

[330 N.C. 133 (1991)]

The trial court in this case concluded that defendant was in custody and was subjected to interrogation, entitling defendant to *Miranda* warnings. The trial court therefore suppressed defendant's first three statements to the officers because the court concluded that these statements were obtained in violation of *Miranda*. The State has not contested the trial court's exclusion of these statements or the trial court's conclusion that defendant was entitled to *Miranda* warnings. As these issues have not been presented for review, we render no opinion as to whether defendant was subjected to custodial interrogation entitling her to *Miranda* warnings. *See* N.C. R. App. P. 10(a), 28 (limiting the scope of appellate review "to a consideration of those assignments of error set out in the record on appeal" and to questions presented in the parties' briefs).

[2] Assuming, *arguendo*, that defendant was entitled to *Miranda* warnings prior to making the first three statements to police officers, we conclude, as a matter of law, that these statements were not coerced or made under circumstances calculated to undermine defendant's exercise of her free will and therefore did not taint the subsequent confession given by defendant following proper *Miranda* warnings. The trial court found as facts that prior to making any statement to the police, defendant was told that she was not under arrest and that she was free to go at any time; that the statement signed by defendant on 14 April 1989 included language informing defendant that the statement could be used against her in court; that after making the 14 April 1989 statements, defendant returned to her home and enjoyed complete liberty until 17 April 1989; that during the period between 14 April 1989 and 17 April 1989, no law enforcement officer or any agent of the State contacted defendant; and that the 14 April 1989 statements were not induced by any threats, promises, inducements, or influence. These findings of fact were supported by competent evidence and are therefore conclusive on appeal. *State v. Gray*, 268 N.C. 69, 78-79, 150 S.E.2d 1, 8 (1966), *cert. denied*, 386 U.S. 911, 17 L. Ed. 2d 784 (1967).

In *Gray*, this Court set forth certain factors to be considered in determining the voluntariness of a confession. Among these factors are whether the defendant was in custody when he made the statement; the mental capacity of the defendant; and the presence of psychological coercion, physical torture, threats, or promises. *Id.* at 78, 150 S.E.2d at 8. However, voluntariness is determined in light of the totality of the circumstances surrounding the confes-

sion. *State v. Richardson*, 316 N.C. at 601, 342 S.E.2d at 829. The presence or absence of one or more of these factors is not determinative. *Id.*

In support of her argument that the unwarned statements were involuntarily coerced, defendant relies solely on the trial court's findings related to the court's conclusion that defendant was in custody at the time that she made the first three statements to the police. We find no merit in defendant's argument. Although custody is one factor that may properly be considered in determining the voluntariness of a confession, we do not find that the custodial situation involved in this case was inherently coercive. As found by the trial judge, defendant, while at the hospital, agreed to go to the police station with Officer Newkirk. Officer Newkirk explained to defendant that she was not under arrest. Once at the station, defendant was advised by Detective Gelling that she had a right to leave the police department and that she was not under arrest for any crime. After making an oral statement to Detective Gelling, defendant then detailed the events in a written statement on a form including the following language:

> I do hereby make this voluntary statement of my own free will and accord to Det[ective] J. Gelling of the Jacksonville Police Department.

> I make this statement in a sound and sober mind. No threats have been made to me nor any promises of a reward to obtain this statement. I have been informed that this statement can be used against me in the Court of Law.

In addition, other evidence, not recited in the trial court's findings, was presented at the suppression hearing indicating that defendant confessed to killing General Kellum because she could no longer "live with the guilt." Although this evidence was not contained in the trial court's findings, the evidence was uncontradicted and therefore may also be considered on appeal to support the trial court's conclusions. *See State v. Richardson*, 316 N.C. 594, 342 S.E.2d 823. Whatever the reason for defendant's decision to confess to the killing of General Kellum, we conclude that the incidents leading to defendant's unwarned statements do not establish that defendant's statements were the result of coercion.

Neither did the officers use defendant's first three statements to pressure defendant to submit to the videotaping of her confes-

STATE v. BARLOW

[330 N.C. 133 (1991)]

sion. Based upon competent evidence, the trial court found that three days had passed between the time defendant made her first statement to the police and the time defendant was asked to return to the station on 17 April 1989. During that interval, defendant was at home. She was not threatened, coerced, or induced by promises made by the police; she freely agreed to accompany Detectives Gelling and Shingleton to the police station and subsequently consented to have her statement videotaped. Immediately before and during the videotaping, defendant was informed, in writing and orally, of her *Miranda* rights. Defendant acknowledged that she understood and waived each of those rights. The trial court's findings, supported by competent evidence, support the trial court's conclusion that defendant's videotaped confession was not rendered inadmissible by defendant's first three statements, made without benefit of *Miranda* warnings.

In summary, we conclude that defendant's statements to the police made without benefit of *Miranda* warnings were not coerced and were not given under circumstances calculated to undermine her ability to exercise her free will. The subsequent confession in question here, given after proper *Miranda* warnings, was knowingly and voluntarily given by defendant. Because the un-Mirandized statements were not obtained in violation of defendant's Fifth Amendment right against compulsory self-incrimination, they did not render defendant's subsequent Mirandized confession inadmissible. We reverse the decision of the Court of Appeals and remand this case to that court for further remand to the Superior Court, Onslow County, with instructions to reinstate the judgment previously entered.

Reversed and remanded.

Justice WEBB did not participate in the consideration or decision of this case.