TYSON, Judge.
*468 Michael Kemp, Sr., ("Respondent-father") appeals from an order concluding that his four children, M.K. (I), M.K. (II), M.K. (III) and M.K. (IV) were neglected and the juveniles' best interests were to remain in the custody of the Mecklenburg County Department of Social Services, *469 Youth and Family Services ("YFS"). At the time of the adjudication, the children were 17, 12, 8 and 7, respectively. We affirm.
I. Background
YFS became involved with the Kemp family after receiving a Child Protective Services ("CPS") referral on 10 August 2012, which alleged domestic violence by Respondent-father. The investigation revealed Respondent-father and the mother had a twenty-year history of domestic violence, the mother feared Respondent-father, and she never contacted law enforcement. Respondent-father admitted he had engaged in physical altercations with the mother. Some of the children had witnessed the domestic violence. M.K. (I), the oldest child, routinely intervened in the altercations. YFS recommended services, including domestic violence counseling, but the parents failed to schedule appointments.
YFS conducted an investigation into a second CPS referral regarding a domestic violence incident, which occurred on 29 September 2013. This incident led to the filing of a juvenile petition on 8 October 2013.
The petition alleged Respondent-father had slapped the mother in the face, pushed the mother, which caused her to fall onto a glass table, bruising both her arms. One of the children witnessed this incident. Law enforcement responded to the home. Respondent-father was arrested for assault on a female.
The mother secured a domestic violence protective order against Respondent-father, but it was dismissed after she failed to appear. The mother relied on Respondent-father for financial support, shelter, and transportation. According to the petition, the children believed Respondent-father might kill their mother one day. The mother reported that Respondent-father had threatened to kill her. On 8 October 2013, YFS also obtained nonsecure custody of the juveniles.
Prior to the filing of the petition, the mother was cooperative with YFS. However, Respondent-father, the mother, and the children disappeared after the petition was filed, and the nonsecure custody order was entered. Respondent-father was eventually served with a summons on 20 November 2013. The mother was served by publication.
Following a hearing, the trial court adjudicated the children neglected. As of the date of the hearing, YFS was still unable to locate the mother and all four children. At disposition, the trial court kept the children in the legal custody of YFS and ordered it to continue attempts to locate the children. The trial court entered a corresponding order on 10 July 2014. Respondent-father appeals.
*470 II. Standard of Review
"Allegations of neglect must be proven by clear and convincing evidence. In *538 a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997) (citations omitted). If competent evidence supports the findings, they are "binding on appeal." In re McCabe, 157 N.C.App. 673, 679, 580 S.E.2d 69, 73 (2003) (citations omitted). "The trial court's conclusions of law are reviewable de novo on appeal." In re J.S.L., 177 N.C.App. 151, 154, 628 S.E.2d 387, 389 (2006) (citations and internal quotation marks omitted).
III. Analysis
A. Verbatim Recitation of DSS Petition
Respondent-father challenges the trial court's adjudication of neglect. He argues twelve of the trial court's findings of fact are improper and cannot support the trial court's adjudication of neglect. He asserts the "findings" are verbatim recitations of YFS's allegations in the petition and not findings of fact. We have held that "[w]hen a trial court is required to make findings of fact, it must find the facts specially." In re Harton, 156 N.C.App. 655, 660, 577 S.E.2d 334, 337 (2003) (internal citations and quotations omitted).
"Thus, the trial court must, through 'processes of logical reasoning,' based on the evidentiary facts before it, 'find the ultimate facts essential to support the conclusions of law.' " In re O.W., 164 N.C.App. 699, 702, 596 S.E.2d 851, 853 (2004) (quoting Harton, 156 N.C.App. at 660, 577 S.E.2d at 337 ). The findings "must be the 'specific ultimate facts ... sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence.' " In re Anderson, 151 N.C.App. 94, 97, 564 S.E.2d 599, 602 (2002) (citation omitted). As a result of the foregoing principles, this Court has repeatedly stated that "the trial court's findings must consist of more than a recitation of the allegations" contained in the juvenile petition. O.W., 164 N.C.App. at 702, 596 S.E.2d at 853.
Many of the trial court's findings are verbatim recitations of YFS's allegations in the petition. "[I]t is not the role of the trial court as fact finder to simply restate the testimony given." Id. at 703, 596 S.E.2d at 854. Regurgitated allegations do not reflect a reconciliation and adjudication of all the evidence by the trial court to allow this Court to determine whether sufficient findings of fact are supported by clear, cogent *471 and convincing evidence. Without adjudicated findings of fact this Court cannot conduct a meaningful review of the conclusions of law and "test the correctness of [the trial court's] judgment." Appalachian Poster Adver. Co. v. Harrington, 89 N.C.App. 476, 480, 366 S.E.2d 705, 707 (1988).
Our Supreme Court has also long required a trial court's findings to reflect a true reconciliation and adjudication of all facts in evidence to enable the appellate courts to review the trial court's conclusions. Quick v. Quick, 305 N.C. 446, 290 S.E.2d 653 (1982).
As stated by this Court, per Justice Exum, in Coble v. Coble, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980).
The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment-and the legal conclusions which underlie it-represent a correct application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead "to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system." Montgomery v. Montgomery, 32 N.C.App. 154, 158, 231 S.E.2d 26, 29 (1977) ; see, e.g., Crosby v. Crosby, 272 N.C. 235, 158 S.E.2d 77 (1967).
Id. at 452, 290 S.E.2d at 658.
We again caution the trial court that its order, upon which the trial judge's signature appears and which we review, must reflect an adjudication, not mere one-sided recitations of allegations presented at the hearing. In re J.W., --- N.C.App. ----, ----, 772 S.E.2d 249, 251 (2015) ("[W]e will examine whether the record of the proceedings demonstrates *539 that the trial court, through the processes of legal reasoning, based on the evidentiary facts before it, found the ultimate facts necessary to dispose of the case.").
Here, the order contains fifteen additional findings of fact which are not verbatim allegations and are properly considered. Of those fifteen, six are substantive findings of fact, which form the basis for the trial court's adjudication of neglect. The trial court did recite verbatim some of the allegations from the petition, which this Court has strongly discouraged. See O.W., 164 N.C.App. at 702, 596 S.E.2d at 853. Disregarding *472 the verbatim allegations, the trial court found the ultimate facts to support its conclusions of law. The trial court heard evidence and made these findings of fact, through a process of logical reasoning, based on the evidentiary facts before it. See id.
The following substantive facts remain for this Court's consideration.
12. The altercation of September 29, 2013 was severe enough that the mother was injured with documented severe bruising to her forearm resulting from her being pushed onto a table. Following the altercation, the parties continued to argue loudly. [M.K. (I) ] came into the room, got between the parents and convinced them to stop.
13. [M.K. (II) ] was present during the altercation. He woke up, saw the mother being pushed and watched her fall onto the table. [M.K.(II) ] was emotionally upset.
....
17. The domestic violence between the parents has occurred in front of the children for a long time. All parties agree the parents argue and typically stop when [M.K. (I) ] asks them to do so. [M.K. (I) ] typically breaks up the argument.
....
19. Once the petition and non-secure were entered, the parents were not located and the children disappeared.
....
24. The law is clear, if domestic violence is going on in a home, it impacts the children. It is neglect. The children were present during the last incident and [M.K. (I) ] broke up the argument. There is evidence that domestic violence has been going on for a long time and the children know about it. This was clear from [M.K. (II)'s] statements and demeanor. [M.K. (I) ] broke up the altercation and stated she was afraid the father might kill her mother.
25. A [seven or eight] year old need not be in the middle of a fight to be impacted by an injurious environment.
*473 It is fortunate the children didn't get into the middle of the altercation.
Of these six findings of fact, Respondent-father challenges all or portions of numbers 12, 13, 24, and 25. As a result, the remaining findings-numbers 17 and 19-are presumed to be supported by competent evidence and are binding on appeal. See In re M.D., 200 N.C.App. 35, 43, 682 S.E.2d 780, 785 (2009). We address each challenged finding in turn.
B. Finding of Fact Number 12
Respondent-father contends that finding of fact 12 is not supported by the evidence because no evidence showed the mother's bruising was "severe". YFS called social worker, Stephanie Brown, who investigated the 29 September 2013 incident. Ms. Brown testified that the mother met with her a few days after the incident and showed her bruises on both arms. Additionally, the police report from the 29 September 2013 incident was received into evidence without objection.
The report recites the mother sustained bruises from her fall after being pushed by Respondent-father. There is ample evidence in the record to support the trial court's finding. Although neither the testimony nor the report uses the term "severe," it was within the province of the trial court, as finder of fact, to draw reasonable inferences based on the evidence before it. See In re Hughes, 74 N.C.App. 751, 759, 330 S.E.2d 213, 218 (1985) ("The trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom.
*540 If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject."). Respondent-father's challenge to finding of fact 12 is overruled.
C. Finding of Fact Number 13
Respondent-father contends finding of fact 13 is not supported by competent evidence, because no evidence showed that M.K. (I) saw his mother being pushed by Respondent-father. Respondent-father contends that evidence only supports a finding that M.K. (II) saw her fall. We disagree.
Respondent-father's contention is directly contradicted by the police report, which states that "[M.K. (I) ] was in the victim's and the suspect's bedroom when the suspect pushed the victim. The [mother] fell down onto a table. As a result of the victim falling onto the table both of her arms have bruises." Finding of fact 13 is supported by evidence received without objection. Respondent-father's challenge to finding of fact 13 is overruled.
*474 D. Finding of Fact Number 25
Respondent-father submits that finding of fact 25 is not really a finding of fact, but rather an observation by the trial court. He argues it cannot support the trial court's conclusion that the children were neglected.
It appears the trial court applied the evidence before it to the law pertaining to neglect. Implicit in number 25 is the trial court's finding that the youngest two children, M.K. (III) and M.K. (IV), did not witness the 29 September 2013 altercation. The trial court applied these facts to the law by finding that the youngest two children did not need to be "in the middle of a fight" to be subjected to an injurious environment. See N.C. Gen.Stat. § 7B-101(15) ("In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile ... lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home."); In re A.S., 190 N.C.App. 679, 690, 661 S.E.2d 313, 320 (2008), aff'd per curiam, 363 N.C. 254, 675 S.E.2d 361 (2009).
This Court looks beyond the "labels" assigned by the trial court when reviewing findings of fact and conclusions of law. See In re M.R.D.C., 166 N.C.App. 693, 697, 603 S.E.2d 890, 893 (2004), disc. review denied, 359 N.C. 321, 611 S.E.2d 413 (2005) ("[I]f a finding of fact is essentially a conclusion of law it will be treated as a conclusion of law which is reviewable on appeal." (citations, internal quotation marks, ellipses, and brackets omitted)). To the extent that this finding would have been more appropriately categorized as a conclusion of law, we will review the finding as a conclusion. Respondent-father's argument is overruled.
E. Finding of Fact Number 24
First, we address Respondent-father's challenge to the portion of finding of fact 24, which states that "[t]here is evidence that domestic violence has been going on for a long time and the children know about it." Respondent-father argues no evidence supports a finding that all four children knew of the domestic violence, only that M.K. (I) and M.K. (II) were aware of it.
This finding is supported by the police report entered into evidence without objection. The police report contains statements that all four children live in the home and that "[t]he suspect has been verbally abusive toward the victim in front of the children," and that "[t]he domestic violence in the home is effecting (sic) the children emotionally." The trial court also admitted a report from the 2012 CPS investigation. This report memorialized interviews YFS conducted with all four children.
*475 It shows that all of the children witnessed their parents engaging in domestic violence. Ample evidence supports the trial court's finding that all four children knew about the arguments and physical altercations.
Respondent-father also challenges the first two sentences in finding of fact 24, which state, "[t]he law is clear, if domestic violence is going on in a home, it impacts the children. It is neglect." Respondent-father argues these sentences are not findings of fact, but instead are expressions of the trial court's understanding of the law. Respondent-father contends no legal authority supports this proposition, and the trial court acted *541 under a misapprehension of the law, which requires reversal.
Reversal is warranted where a trial court acts under a misapprehension of the law. Our Supreme Court has held that "where it appears that the judge below has ruled upon matter before him upon a misapprehension of the law, the cause will be remanded to the Superior Court for further hearing in the true legal light." Capps v. Lynch, 253 N.C. 18, 22, 116 S.E.2d 137, 141 (1960) (internal quotation omitted).
We have previously held that evidence of a child's continued exposure to domestic violence may constitute an environment injurious to the juvenile's welfare. Where the evidence clearly and convincingly shows such exposure negatively impacts the child, and places the child at risk, that evidence may support an adjudication of neglect. See In re W.V., 204 N.C.App. 290, 294, 693 S.E.2d 383, 386 (2010) ; In re D.B.J., 197 N.C.App. 752, 755, 678 S.E.2d 778, 780-81 (2009) ; In re T.S., 178 N.C.App. 110, 113-14, 631 S.E.2d 19, 22-23 (2006), aff'd per curiam, 361 N.C. 231, 641 S.E.2d 302 (2007).
After reviewing the evidence of recurring violence over a long period of time, the trial court did not act under a misapprehension of the law. The remaining substantive findings of fact sufficiently detail the impacts Respondent-father's domestic violence with the mother had on his children.
The totality of the trial court's findings of fact demonstrate that the trial court was not acting under a misapprehension of the law. See State v. Barlow, 102 N.C.App. 71, 75, 401 S.E.2d 368, 370, remanded for reconsideration on other grounds by 328 N.C. 733, 404 S.E.2d 872, amended by 103 N.C.App. 276, 405 S.E.2d 372, and reversed on other grounds by 330 N.C. 133, 409 S.E.2d 906 (1991) (finding no error on the part of the trial court where "[d]espite language of the [trial court's] order, the record indicates that the trial court was not [acting] under any mistaken impression that it was required to rule a particular way as a matter of law"). To the extent that these findings are more appropriately *476 reviewed as conclusions of law, we review them as such. See M.R.D.C., 166 N.C.App. at 697, 603 S.E.2d at 893. Respondent-father's argument is overruled.
IV. Conclusion
The trial court's evidentiary and adjudicatory findings of fact are supported by clear, cogent and convincing evidence. These findings support the trial court's conclusion that all four juveniles were neglected. The trial court's findings of fact detail a longstanding and abusive relationship between Respondent-father and the mother, as well as their impact on and potential harm to the juveniles. The trial court's adjudication of neglect by Respondent-father is affirmed.
AFFIRMED.
Judges ELMORE and INMAN concur.
Judge INMAN concurs in a separate opinion.
INMAN, Judge, concurring by separate opinion.
I concur but write separately because I believe the majority opinion's statement that "[r]egurgitated allegations do not reflect a reconciliation and adjudication of all the evidence by the trial court to allow this Court to determine whether sufficient findings of fact are supported by clear, cogent and convincing evidence" suggests that trial court findings which appear to be "cut and pasted" from the parties' pleading per se preclude meaningful appellate review or are otherwise per se deficient. This court's decision in In re J.W. and K.M., --- N.C.App. ----, ----, 772 S.E.2d 249, 253 (2015), cited by the majority, holds otherwise, for reasons explained in that decision as well as in dicta in In re A.B., --- N.C.App. ----, ----, 768 S.E.2d 573, 579 (2015).