IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-403

Filed 5 February 2025

Forsyth County, No. 24 J 001

IN THE MATTER OF: N.R.R.N. aka N.R.N.

Appeal by respondent-parents from order entered 21 February 2024 by Judge David E. Sipprell in District Court, Forsyth County. Heard in the Court of Appeals 5 November 2024.

*Deputy County Attorney Theresa A. Boucher for petitioner-appellee Forsyth County Department of Social Services.*

*Michelle FormyDuval Lynch for the guardian ad litem.*

*Edward Eldred for respondent-appellant mother.*

*Marion K. Parsons for respondent-appellant father.*

STROUD, Judge.

Respondent-Parents appeal from an order entered 21 February 2024 adjudicating their infant child abused and neglected and relieving Petitioner Forsyth County Department of Social Services of efforts to reunify Respondent-Parents with the child. We affirm the trial court's adjudication of the infant child to be a neglected juvenile and affirm in part and vacate in part the trial court's disposition ceasing reunification efforts.

## I. Background

Respondent-Parents Karema Coleman ("Mother") and Patrick Nicholson

("Father") (collectively, "Parents") are the mother and father of minor child Nora,[1] born January 2024. Two days after Nora's birth, Forsyth County Department of Social Services ("DSS") filed a Juvenile Petition alleging Nora to be an abused and neglected juvenile. An order for non-secure custody was granted that same day. The petition's allegations, and the trial court's order finding Nora to be abused and neglected, were based mostly on Parents' treatment of Nora's older sister, Nan.

Born at twenty-seven weeks gestation in January 2023, Nan[2] remained in neonatal intensive care until she was released to the care of Parents on 12 April 2023. Only one week later, Parents returned to the hospital to admit Nan for a "near fatality event." Nan was diagnosed with three skull fractures, a large bilateral subdural hematohygroma, extensive fluid and bleeding around her spinal cord, and more. A doctor determined:

> This constellation of injuries without any accidental explanation is highly concerning for abusive head trauma. These significant concerns are heightened by the information we have regarding very concerning behaviors by [Nan]'s father which were documented while [Nan] was in the NICU. We would consider this a near-fatality for [Nan] and she likely would have died without lifesaving resuscitation in the ED.

In accordance with these findings and others, a trial court adjudicated Nan an abused and neglected juvenile by order filed on 27 October 2023. Further, on 28 September

---

[1] Stipulated pseudonyms are used to protect the identity of minor children. *See* N.C. R. App. P. 42.

[2] Also a stipulated pseudonym.

2023, both Mother and Father were charged with Felony Intentional Child Abuse Inflicting Serious Physical Injury and Felony Intentional Child Abuse Inflicting Serious Bodily Injury. At the time of Nora's adjudication hearing on 12 February 2024, Mother had been released on bond for these charges, while Father remained in the Forsyth County Detention Center awaiting trial.

Parents previously appealed Nan's adjudication to this Court, in which we concluded the trial court did not err in finding Nan an abused and neglected juvenile. *See In re N.N.*, ___ N.C. App. ___, 907 S.E.2d 430 (2024).

As for Nora and the case at hand, the trial court adjudicated her abused and neglected given both Mother and Father's felony child abuse charges, finding Nora to be "at substantial risk of harm based upon the serious physical abuse inflicted on her sibling which injuries occurred while [Nan] was 3 months old, and she had only been in the care of [Mother] and [Father] for one week."

Mother filed notice of appeal on 21 February 2024. Father filed notice of appeal on 15 March 2024.

## II.    Standard of Review

In juvenile adjudications of abuse and neglect,

> [a]n appellate court reviews a trial court's adjudication to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law. Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal. Conclusions of law made by the trial court are

reviewable de novo on appeal. An appeal de novo is one in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the trial court.

*In re K.S.*, 380 N.C. 60, 64, 868 S.E.2d 1, 4 (2022) (citations, quotation marks, brackets, and footnotes omitted). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5-6, 832 S.E.2d 698, 700 (2019) (quoting N.C. Gen. Stat. § 7B-1109(f)).

"It is well established that 'clear and convincing' and 'clear, cogent, and convincing' describe the same evidentiary standard." *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984). This evidentiary standard is an intermediate standard "greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." *Id.* at 109-110, 316 S.E.2d at 252 (citing *Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599 (1982)).

### III.    Analysis

Mother and Father present similar arguments on appeal. First, both challenge the findings of fact based on the claims that the evidence presented at adjudication was insufficient because DSS presented the verified petition and testimony from DSS

investigator Natasha Price who verified the petition was true. Second, Parents contend the findings of fact do not support the adjudication of abuse as they would "[a]t most" support a conclusion that Nora was only *at risk* of abuse, and therefore neglected. Third, Parents contend they were denied their right to effective assistance of counsel during the 12 February 2024 adjudication hearing. Finally, Parents argue the trial court erred by ceasing reunification efforts during the initial disposition. We address each issue in turn.

## A. Sufficiency of the Evidence

Both Mother and Father challenge the sufficiency of the evidence relied on by the trial court in adjudicating Nora to be an abused and neglected juvenile. Specifically, Parents contend the trial court's findings of fact "[were] not supported by clear, cogent, and convincing evidence where the only evidence was the verified petition and the verifier's testimony that the information in the petition was true."

### 1. Findings of Fact

On appeal, Father argues ten of the fifteen substantive findings made by the trial court during the adjudicatory phase were insufficient to support abuse and neglect under the standard of clear and convincing evidence because they were "verbatim recitations" of the petition's allegations. In making this argument, Father cites to this Court's opinion in *In re M.K.*, which stated

> [r]egurgitated allegations do not reflect a reconciliation and adjudication of all the evidence by the trial court to allow this Court to determine whether sufficient findings

of fact are supported by clear, cogent and convincing evidence. Without adjudicated findings of fact this Court cannot conduct a meaningful review of the conclusions of law and test the correctness of the trial court's judgment.

*In re M.K.*, 241 N.C. App. 467, 470-71, 773 S.E.2d 535, 538 (2015) (citations, brackets, and quotation marks omitted).  As noted in *In re M.K.*, this Court has "strongly discouraged" verbatim recitation of "the allegations from the petition."  *Id.* at 471, 773 S.E.2d at 539.  However, this Court in *In re M.K.* ultimately reviewed the other "substantive findings of fact, which form[ed] the basis for the trial court's adjudication of neglect[,]" *id.*, and concluded that "[t]he trial court's evidentiary and adjudicatory findings of fact [were] supported by clear, cogent and convincing evidence[,]" *id.* at 476, 773 S.E.2d at 541.

This Court has also made it clear

> it is not *per se* reversible error for a trial court's fact findings to mirror the wording of a petition or other pleading prepared by a party. Instead, this Court will examine whether the record of the proceedings demonstrates that the trial court, through processes of logical reasoning, based on the evidentiary facts before it, found the ultimate facts necessary to dispose of the case. If we are confident the trial court did so, it is irrelevant whether those findings are taken verbatim from an earlier pleading.

> . . . .

> [I]t would impose an impossible burden on trial court judges if we were to hold that any findings "cut-and-pasted" from a party's pleading automatically warranted reversal of the order. If a trial court, after carefully considering the evidence, finds that the facts are exactly as alleged in a

> party's pleading, there is nothing wrong with repeating
> those same words in an order. The purpose of trial court
> orders is to do justice, not foster creative writing.

*In re J.W.*, 241 N.C. App. 44, 48-49, 772 S.E.2d 249, 253 (2015).

In *In re J.W.*, this Court concluded the trial court "through processes of logical reasoning, based on the evidentiary facts before it, found the ultimate facts necessary to support its conclusions of law," even though some findings had been "cut-and-pasted" wording from the juvenile petition. *Id.* at 49, 772 S.E.2d at 254. In support of these findings being ultimate facts, this Court noted the trial court heard four days of testimony corroborating the allegations before making its final adjudication. *See id.* "Accordingly, we will only consider those findings that are, in fact, supported by evidence in the record regardless of whether they mirror the language used in the petition." *In re L.C.*, 253 N.C. App. 67, 71, 800 S.E.2d 82, 86 (2017).

Mother also argues that the findings of fact were not supported by clear, cogent and convincing evidence. Mother contends that in reviewing findings of fact which must be based upon clear, cogent, and convincing evidence, the appellate court should "account for the 'level of confidence' the trial court's standard of proof demands[,]" basing her argument on a case from the California Supreme Court which clarified "how an appellate court is to review the sufficiency of the evidence associated with a finding made by the trier of fact pursuant to the clear and convincing standard." *See Conservatorship of O.B.*, 9 Cal. 5th 989, 995, 470 P.3d 41, 44 (2020). The California Supreme Court in *O.B.* stated:

We now dispel this uncertainty over the proper manner of appellate review by clarifying that an appellate court evaluating the sufficiency of the evidence in support of a finding must make an appropriate adjustment to its analysis when the clear and convincing standard of proof applied before the trial court. In general, when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof.

*Id.* at 1005, 470 P.3d at 50-51 (footnote omitted).

Mother contends "California's analysis is instructive and persuasive" and that "no North Carolina case performs such an exhaustive analysis[.]" Mother may be correct that no North Carolina case addresses how an appellate court should review findings as extensively as *O.B.*, but this Court is still bound to follow North Carolina law. The California Supreme Court's extensive analysis was required by splits of authority in cases decided by different divisions of the intermediate appellate courts in California: "There is a split of opinion over how an appellate court should address a claim of insufficient evidence such as the one advanced here." *Id.* at 995, 470 P.3d at 44. But North Carolina has no such split of authority to address, and this Court is bound by precedent from our Supreme Court. *See State v. Ledbetter*, 243 N.C. App. 746, 751, 779 S.E.2d 164, 168 (2015) ("We are bound by the decisions of our Supreme Court and by prior decisions of another panel of our Court addressing the same question, unless overturned by an intervening decision from a higher court." (citation

omitted)).

Mother's main substantive argument based on North Carolina law is that DSS's reliance on the allegations of the petition cannot meet the standard of clear, cogent, and convincing evidence. In *In re Z.G.J.*, our Supreme Court held that the evidence was sufficient to support adjudication of grounds for termination of parental rights where DSS presented the petition and testimony from a DSS representative "adopting the allegations" of the petition:

> In this case, DSS called Johnson as a witness and tendered her to give testimony. While Johnson's testimony was not extensive, she orally reaffirmed, under oath, all of the allegations from the termination petition. Respondent was given the opportunity to cross-examine Johnson with respect to any of these allegations, and she declined to do so. In light of Johnson's testimony, the trial court conducted a proper adjudication hearing in accordance with N.C.G.S. § 7B-1109(e), and it did not err by relying on Johnson's testimony adopting the allegations in the termination petition when it entered its adjudication order.

*In re Z.G.J.*, 378 N.C. 500, 508, 862 S.E.2d 180, 187 (2021). Mother tries to distinguish this case from *In re Z.G.J.* by arguing that here, Ms. Price "did not adopt the petition's allegations as her testimony. She merely testified the information in the petition was true." Also, Mother claims the respondent in *In re Z.G.J.* did not challenge the sufficiency of the evidence to support the findings of fact.

Mother is correct that the social workers who testified in *In re Z.G.J.* did not use the exact same words as the witness in this case to confirm that they had verified the petitions and that the information in the petitions was true, but there is no

substantive difference in the meaning of their testimony. The Court in *In re Z.G.J* did not hold that social workers must use magic words to testify in support of the contents of the petition. In both *In re Z.G.J.* and this case, the testifying social workers confirmed that the information in the petitions were true and accurate, and, in both cases, the petition was then received into evidence with no objection. *See id.* at 507, 862 S.E.2d at 186. There is no substantive difference between this case and *In re Z.G.J.* as to the testimony of the social worker who verified the petitions.[3]

Mother then tries to distinguish *In re Z.G.J.* by arguing respondent in that case "did not challenge the sufficiency of the evidence to support the findings[]" beyond her challenge to the presentation of evidence by the social worker's testimony confirming the petition. But Mother likewise presents no substantive challenge to the findings of fact other than claiming the trial court should not have relied on the petition's allegations. Father also presents no substantive challenges to the findings

---

[3] In *In re Z.G.J.*, the Supreme Court remanded because the issues in that case required findings addressing circumstances at the time of the hearing, but the social worker's testimony and allegations of the petition addressed only events as of the date of filing of the petition:

> However, the only evidence offered by DSS at adjudication was Johnson's testimony adopting the termination petition, which was filed on 21 August 2018. The termination hearing did not occur until more than thirteen months later, on 24 September 2019. Thus, the allegations in the petition do not shed any light on respondent's fitness to care for Ann at the time of the termination hearing, and the trial court erred by relying on the stale information in the petition as its only support for this ground.

*In re Z.G.J.*, 378 N.C. at 509-10, 862 S.E.2d at 188 (citation omitted). Here, the adjudication was properly based upon facts as of the date of the filing of the petition, and Ms. Price testified that the petition was "still true and accurate today as it was on the day [she] filed the petition." Ms. Price also testified that neither parent had provided "an explanation as to how [Nan] had received her non-accidental trauma injuries in April of 2023."

beyond contending only five of the findings "are not verbatim recitations of the petition's contents" and two others are really conclusions of law, not findings of fact.

Here, after examination of the entire record before us, we are satisfied the trial court independently found the ultimate facts of the case based on sufficient evidence, even though many of its substantive findings were verbatim recitations of the wording in the petition. During the hearing, the court heard testimony from Ms. Price, the Forsyth County DSS worker who signed and filed the juvenile petition relating to Nora. Ms. Price testified to the truth and accuracy of the allegations within the petition at the time of filing and attested to their truth and accuracy at the time of trial. Ms. Price also testified neither Mother nor Father ever provided any explanation to DSS as to how Nan received her injuries in April of 2023. Following this testimony, neither counsel for Mother nor Father objected to the admission of the juvenile petition into evidence, presented any evidence opposing the petition and its allegations, nor elected to cross-examine Ms. Price. The trial court noted the absence of objection and presentation of evidence opposing the petition in its substantive adjudicatory findings of fact.

The trial court exercised logical reasoning and the competent evidence supported its findings of fact. Along with the sworn testimony of Ms. Price, the record on appeal also indicates the trial court relied on the prior adjudication and disposition of Nan. The prior order regarding the abuse and neglect of Nan was part of the evidence supporting the trial court's findings regarding Nora. Where a prior order

adjudicates a sibling to be abused and neglected, and DSS relies upon the prior order in allegations regarding another sibling's risk of being subjected to similar harms, the trial court may rely upon this evidence in making its findings of fact. *See In re N.G.*, 186 N.C. App. 1, 9, 650 S.E.2d 45, 50 (2007). Father's argument the trial court's findings are insufficient because some are verbatim recitations of the petition's wording is without merit.

Father also argues two of the trial court's findings are actually conclusions of law. Specifically, Father challenges Findings 18 and 29, which read:

> 18. The Court finds that [Nora] is an abused and neglected juvenile as pursuant to N.C.G.S. 7B-101(1) and 7B-101(15).
>
> . . . .
>
> 29. Based upon the foregoing, the Court finds by clear, cogent and convincing evidence that [Nora] is an abused and neglected juvenile in that her parents have created or allowed to be created a substantial risk of serious physical injury by other than accidental means. Also, the parents of [Nora] have created or allowed to be created a living environment that is injurious to the child's welfare.

Our Supreme Court has recently reiterated the distinction between ultimate facts and conclusions of law:

> There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts.
>
> Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side

and conclusions of law on the other. In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law.

When the statements of the judge are measured by this test, it is manifest that they constitute findings of ultimate facts, *i.e.*, the final facts on which the rights of the parties are to be legally determined.

*In re G.C.*, 384 N.C. 62, 66, n. 3, 884 S.E.2d 658, 661, n. 3 (2023) (citation, quotation marks, and ellipses omitted).

We agree with Father's contention that Finding 18 is a conclusion of law but Finding 29 is a finding of ultimate fact. *See id.* at 67, 884 S.E.2d at 662 ("Here, the trial court specifically found that Glenda 'lived in an environment injurious to [her] welfare; and that [she] does not receive proper care, supervision, or discipline from [her] parent, guardian, [or] custodian.' These findings are properly characterized as ultimate findings and satisfy the statutory definition of neglected juvenile. The ultimate findings of fact that Glenda does not receive proper care, supervision, or discipline from her parents is supported by the trial court's evidentiary findings of fact and reached by natural reasoning from the evidentiary findings of fact." (brackets in original)). The mislabeling of conclusions of law as findings of fact, however, does not defeat the issue for appellate review. *See City of Charlotte v. Health*, 226 N.C. 750, 755, 40 S.E.2d 600, 604 (1946) ("The label of fact put upon a conclusion of law

will not defeat appellate review."); *see also Stan D. Bowles Distributing Co. v. Pabst Brewing Co.*, 69 N.C. App. 341, 344, 317 S.E.2d 684, 686 (1984) ("If the finding of fact is essentially a conclusion of law, however, it will be treated as a conclusion of law which is reviewable on appeal." (citations omitted)).  Father makes no argument beyond those already addressed as to Finding 29, and this finding is supported by evidentiary findings and by the evidence.  We will address Finding 18 below as a conclusion of law.

### 2. *Conclusions of Law*

We next address Parents' challenges to the trial court's conclusions of law that Nora was a neglected and abused juvenile.  Mother essentially concedes that the findings of fact would support the conclusion that "Nora was at risk of being abused; i.e., that she was neglected[]" and both Parents focus most of their argument upon the adjudication of Nora's status as an abused juvenile. We will first address the trial court's conclusion of law that Nora was a neglected juvenile.

#### a. *Neglect Adjudication*

Our North Carolina General Assembly has defined a neglected juvenile to include a minor whose parent, guardian, or caretaker "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare."  N.C. Gen. Stat. § 7B-101(15)(e) (2023).

> A court may not adjudicate a juvenile neglected solely
> based upon previous Department of Social Services
> involvement relating to other children. Rather, in

> concluding that a juvenile lives in an environment
> injurious to the juvenile's welfare, the clear and convincing
> evidence in the record must show current circumstances
> that present a risk to the juvenile.

*In re J.A.M.*, 372 N.C. 1, 9, 822 S.E.2d 693, 698 (2019) (citations and quotation marks omitted). "The neglect statute neither dictates how much weight should be given to a prior neglect adjudication, nor suggests that a prior adjudication is determinative. Rather, the statute affords the trial judge some discretion in determining the weight to be given such evidence." *Id.* (citations and quotation marks omitted).

Here, Parents argue the trial court improperly relied on the prior adjudication of Nan in concluding Nora to also be a neglected and abused juvenile, contending there were no other factors to support such conclusions. Our Supreme Court in *In re A.J.L.H.* explained

> [a]lthough a trial court cannot rely solely on abuse of
> another child in the home as a basis for a neglect
> adjudication, we have emphasized that a trial court need
> not wait for actual harm to occur to the child if there is a
> substantial risk of harm to the child in the home. This is
> particularly true for very young children, where the
> evaluation must of necessity be predictive in nature, as the
> trial court must assess whether there is a substantial risk
> of future abuse or neglect of a child based on the historical
> facts of the case.

*In re A.J.L.H.*, 384 N.C. 45, 55, 884 S.E.2d 687, 694 (2023) (citations and quotation marks omitted).

We agree with Parents' claim the prior adjudication of Nan, standing alone, cannot serve as grounds to adjudicate Nora as a neglected juvenile. We disagree,

however, with their claims that no other factors were present to support the trial court's conclusion of Nora to be a neglected juvenile. As our Supreme Court in *In re A.J.L.H.* further explained:

> When determining the weight to be given to a finding of abuse of another child in the home, a critical factor is whether the respondent *indicates a willingness to remedy the injurious environment that existed with respect to the older child*. Facts that can demonstrate a parent's unwillingness to remedy the injurious environment include failing to acknowledge the older child's abuse or insisting that the parent did nothing wrong when the facts show the parent is responsible for the abuse.

*Id*. at 56, 884 S.E.2d at 694-95 (emphasis added). In *In re A.J.L.H.*, our Supreme Court affirmed a trial court's adjudication of a neglected juvenile, based on past abuse of a sibling, on grounds that "[t]he key 'other factor' in this case, beyond the abuse of [the fellow sibling], is respondents' inability to recognize that it *was* abuse, and their corresponding inability to commit to never repeating it." *Id*. (emphasis in original).

Here, the trial court's findings indicated neither Mother nor Father had acknowledged the injurious environment created for Nan, nor had they taken any steps to remedy this environment to ensure any potential future harm to Nora. Specifically, in Finding 24, the trial court found "[d]uring the period from April 12-19, 2023, [Nan] was in the exclusive care custody and control of her parents[.] Neither parent has provided an explanation for the child's injuries consistent with the medical findings." The unwillingness to acknowledge the abuse and take steps to ensure it will never happen again is further supported by the trial court's finding that, during

the hearing, Parents stood mute to the allegations of the petition and presented no evidence in opposition.

Under precedent established by our Supreme Court, here, the trial court did not have to wait for Nora to be subjected to similar harms faced by her sister before adjudicating her neglected. *See id.* ("[T]he trial court was not required to wait for Chris and Anna to reach the same age as Margaret before determining that they, too, face a substantial risk of harm from these cruel and inappropriate disciplinary measures."). According to the trial court's findings, Nan was only in the care of her parents a little over a week following her birth before she was immediately re-admitted to the hospital for her life-threatening injuries. Following Nora's birth, a little over a year after Nan's, Parents had still provided no explanation for Nan's injuries. As Nora was around the same age as Nan when Nan sustained her injuries, there was a substantial risk of physical harm to Nora, and the trial court is not required to wait for this harm to occur before adjudicating Nora to be a neglected juvenile. We affirm the trial court's adjudication of Nora as a neglected juvenile.

### b. *Abuse Adjudication*

Along with the trial court's adjudication of Nora to be a neglected juvenile, the trial court also determined her to be an abused juvenile under North Carolina General Statute Section 7B-101(1). Parents argue, as they did with the neglect adjudication, the evidence was insufficient to support the adjudication of Nora to be an abused juvenile. We agree.

Section 7B-101(1) defines an "abused" juvenile as one whose "parent, guardian, custodian, or caretaker:"

a. Inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means;

b. Creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means;

c. Uses or allows to be used upon the juvenile cruel or grossly inappropriate procedures or cruel or grossly inappropriate devices to modify behavior;

d. Commits, permits, or encourages the commission of a violation of [one or more of the included sexual offenses] by, with, or upon the juvenile . . . ;

e. Creates or allows to be created serious emotional damage to the juvenile . . . ; or

f. Encourages, directs, or approves of delinquent acts involving moral turpitude committed by the juvenile.

N.C. Gen. Stat. § 7B-101(1) (2023). As noted by our Supreme Court in *In re M.G.*, "[t]here is a commonality present in these criteria. Each definition states that a juvenile is abused when a caretaker harms the juvenile in some way, allows the juvenile to be harmed, or allows a substantial risk of harm." *In re M.G.*, 363 N.C. 570, 573, 681 S.E.2d 290, 292 (2009). As for the harm faced by a juvenile, or a substantial risk of harm, "[t]he harm may be physical, *see* N.C.G.S. § 7B-101(1)(a), (b); emotional, *see id.* § 7B-101(1)(e), (f); or some combination thereof, *see id.* § 7B-101(1)(c), (d)." *Id.*

The trial court, here, found Nora to be an abused juvenile "in that her parents have created or allowed to be created a substantial risk of serious physical injury by other than accidental means." In making this determination, similar to the neglect adjudication, the trial court relied heavily on the earlier actions of Parents that resulted in the non-accidental injuries sustained by Nora's sister. As already discussed above, a history of juvenile abuse and neglect can serve as sufficient grounds for adjudicating a sibling as presently neglected if there are some "other" factors present. However, we have no caselaw supporting the notion that past abuse of a sibling—either standing alone or joined with some other factors—can serve as sufficient grounds for *also* finding a sibling presently abused.

As for a substantial risk of harm, this Court has upheld abuse adjudications where the actions of caretakers directly creates a substantial risk of harm to the child, s*ee In re K.B.*, 253 N.C. App. 423, 801 S.E.2d 160 (2017), or when the caretakers are aware of a substantial risk of harm and they take no action to remedy this risk, *see In re W.C.T.*, 280 N.C. App. 17, 867 S.E.2d 14 (2021). For example, this Court in *In re K.B.* upheld an abuse adjudication of a special needs child where evidence tended to show the respondents could not maintain the child's medication regimen and were further unable to supervise the child to prevent him from harming himself. *See In re K.B.*, 253 N.C. App. at 429-36, 801 S.E.2d at 165-68. Though there were also some actual, measurable physical injuries sustained by the child in *In re K.B.*, the grounds for concluding a substantial risk of harm arose from findings tending to show that

failure to supervise the child and administer his medication directly increased the child's likelihood of harming himself due to his special needs. *See id.* at 434, 801 S.E.2d at 167-68 ("These findings show that despite being aware of Kirk's mental health and behavior issues, [the] respondents failed to provide adequate supervision and properly maintain Kirk's medication which caused his unbalanced behavior in early November. Even if inflicted by Kirk on himself, the injuries were nevertheless the result of physical harm 'by other than accidental means' that [the] respondents allowed to occur due to their failure to maintain Kirk's medication and provide adequate supervision to meet Kirk's special needs."). Additionally, in *In re K.B.*, the trial court found the child "did not experience any substantial injuries in any of the placements outside of respondents' home. This finding shows that Kirk's other placements were able to provide proper supervision and prevent Kirk from causing any self-harm." *Id.* at 434-35, 801 S.E.2d at 168.

In *In re W.C.T.*, this Court affirmed a trial court's abuse adjudication where evidence tended to show the respondent-parents allowed the paternal grandmother to supervise the child, knowing she suffered from mental health and behavioral issues. *See In re W.C.T.*, 280 N.C. App. at 37, 867 S.E.2d at 28. This Court noted that the trial court's findings

> [tended to] show [the r]espondent-[m]other knew of the paternal grandmother's unstable behavior, which necessitated medication, and the substantial risk of physical injury her volatile conduct posed to the children. Despite this risk, [the r]espondent-[m]other allowed the

> paternal grandmother to continue to care for her children, and she failed to take steps to ensure her children were properly supervised and protected.

*Id.* at 37-38, 867 S.E.2d at 28 (citations omitted).

But in *In re K.L.*, this Court reversed and remanded a trial court's abuse adjudication where there was "nothing to bridge the evidentiary gap between the [juvenile's] unexplained injuries . . . and the conclusion that [his parents] inflicted them[.]" *See In re K.L.*, 272 N.C. App. 30, 46, 845 S.E.2d 182, 194 (2020). In *In re K.L.*, however, the juvenile had sustained actual physical injury, and whether the parents inflicted such injuries was central to the adjudication of abuse. *See id.* at 46-47, 845 S.E.2d at 194-95.

Here, the trial court made no findings of fact indicating Nora had been subjected to any physical harm at the hands of Parents nor that their actions and/or inactions directly placed Nora in a substantial risk of harm. The only findings of harm are those pertaining to the injuries sustained by Nora's older sister, Nan. The physical injuries sustained by Nan, along with Parents' inability to explain them, is not enough to presently adjudicate Nora to be an abused juvenile. There must be some evidence and findings to suggest Nora had been subjected to harm at the hands of Parents or that she faced a substantial risk of harm due to Parent's care and supervision of *her*; not her sister. Because the trial court made no such findings, the trial court's findings do not support the conclusion as to abuse. We reverse the trial court's adjudication of Nora as an abused juvenile.

## B. Ineffective Assistance of Counsel

Both Mother and Father argue on appeal they were denied their right to effective assistance of counsel during the hearing on 12 February 2024. It should be noted Parents presented the same argument on appeal of Nan's adjudication, alleging they were denied effective assistance of counsel. *See In re N.N.*, ___ N.C. App. ___, 907 S.E.2d 430. Here, like our conclusions in the appeal of Nan's adjudication, *see id.*, we disagree with Parents' argument they received ineffective assistance of counsel.

In the appeal of Nan's adjudication, this Court explained:

> Parents have a statutory right to counsel in an abuse, neglect, or dependency case, N.C. Gen. Stat. § 7B-602(a) (2023), which encompasses the right to the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a parent must show counsel's performance was deficient or fell below an objective standard of reasonableness that denies the parent a fair hearing. Thus, to prevail, a parent must demonstrate prejudice—a reasonable probability that counsel's deficient performance led to a different result in the proceedings.
>
> . . .
>
> It is well established that attorneys have a responsibility to advocate on the behalf of their clients. However, counsel's failure to advocate for a respondent-parent is not necessarily an indication of ineffective assistance of counsel. In some cases, such a choice by counsel may be the result of strategy or because resourceful preparation revealed nothing positive to be said for the respondent-parent in a particular hearing. There is a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. Counsel is given

> wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for a party to bear.

*Id*. at \_\_\_, 907 S.E.2d at 438-39 (citations, quotation marks, and brackets omitted).

Here, Mother contends her counsel failed to object to the submission of the juvenile petition into evidence, did not move to dismiss at the close of DSS's evidence, and overall remained "mute" throughout the adjudicatory proceedings. Father contends his counsel "failed to object to the entry of the petition into evidence," "offered no evidence in opposition" to the petition's allegations, "did not cross-examine" DSS's witness, and further "posed no questions and called no witnesses of his own."

In the appeal of Nan's adjudication, we discussed the likelihood of counsels' decisions to "stand mute" as being influenced by Parents having pending felony charges relating to the alleged child abuse of Nan. *See id*. at \_\_\_, 907 S.E.2d at 439. Relevant to these proceedings, Parents were still awaiting disposition of these charges at the time of the 12 February 2024 hearing. Like counsels' previous decision to remain mute during some of Nan's proceedings, the decision to remain mute during certain parts of Nora's proceedings was likely, again, a strategic decision to not offer any evidence that may incriminate Parents on their felony child abuse charges.

Although counsel for Parents participated little during the adjudication phase, they actively participated during the dispositional hearing. For example, counsel for Mother actively participated during disposition by cross-examining Fialisa Pickard,

social worker for DSS assigned to Nora. Counsel for Mother and Father presented their own, individual arguments during disposition as to why the trial court should not cease reunification efforts. Specifically, counsel for Mother argued the trial court should not cease reunification efforts as Mother was still seeking employment and more suitable living arrangements and has shown active involvement during her visitations with Nora. Counsel for Mother also urged the trial court to increase the scheduled visitations between Mother and Nora from one hour to two hours, as Mother and Nora are "in a critical time period where a mother/child bond can be formed." Further, Father's counsel urged the trial court to not cease reunification based on Father's constitutionally protected rights as a parent and because Father had not yet been found guilty of any specific acts causing Nan's harm in the pending felony child abuse charge.

In arguing ineffective assistance of counsel, Mother contends this Court should find the facts of this case consistent with the facts and holdings in *In re T.D.*, No. COA15-1393, 248 N.C. App. 366, 790 S.E.2d 752 (2016) (unpublished). In *In re T.D.*, this Court remanded to the trial court, holding counsel "made absolutely no contribution to the proceedings and in no way advocated on her behalf at the hearing" in "either the adjudication or the disposition stage of the hearing[.]" *Id.*, slip op. at 5-6. We do not agree with Mother's claim that the holdings of *In re T.D.* should be applied in this case. Here, counsel for both Mother and Father, unlike counsel in *In re T.D.*, actively participated during the dispositional phase of the hearing to advocate

for their clients.

As in the appeal from Nan's adjudication, our review of the hearing transcript suggests counsels' silence during the adjudicatory stage of Nora's hearing was a permissible strategic decision and is not ineffective assistance of counsel requiring remand. Also, even if we assumed the silence of Parents' counsel at adjudication was deficient performance, Parents cannot show they were deprived of a "fair hearing" or that but for counsel's performance, there would have been a "different result in the proceedings." *See In re C.B.*, 245 N.C. App. 197, 213, 783 S.E.2d at 206, 217 (2016) (citations and quotation marks omitted). Even if either counsel presented a motion to dismiss, as Mother argues should have been done, the trial court should not have dismissed the petition and the motion would not have resulted in a different outcome in the proceedings. There was sufficient evidence presented for the trial court to conclude Nora to be a neglected juvenile based on Nan's previous adjudication, along with the presence of an unwillingness of either parent to acknowledge Nan's harm and to ensure this harm will not occur again. Parents' ineffective assistance of counsel arguments are overruled.

## C. Reunification Efforts

Finally, Parents contend the district court erred and abused its discretion by not requiring DSS to continue reunification efforts at the initial disposition hearing. We agree with Parents' argument as it relates to the trial court's determination under North Carolina General Statute Section 7B-901(c)(1)(f) of the Juvenile Code, but

disagree as to the trial court's determinations made under Section 7B-901(c)(3)(iii). We affirm in part and vacate in part the trial court's dispositional order relating to the cessation or reunification efforts.

If a trial court ceases reunification efforts during an initial disposition, "the trial court . . . [must] make written findings pertaining to one of the circumstances listed" in Section 7B-901(c). *See In re L.N.H.*, 382 N.C. 536, 546, 879 S.E.2d 138, 145 (2022) (citation omitted). Section 7B-901(c) reads:

> If the disposition order places a juvenile in the custody of a county department of social services, the court shall direct that reasonable efforts for reunification as defined in G.S. 7B-101 shall not be required if the court makes written findings of fact pertaining to any of the following, unless the court concludes that there is compelling evidence warranting continued reunification efforts:
>
> (1) A court of competent jurisdiction determines or has determined that aggravated circumstances exist because the parent has committed or encouraged the commission of, or allowed the continuation of, any of the following upon the juvenile:
>
>     a. Sexual abuse.
>     b. Chronic physical or emotional abuse.
>     c. Torture.
>     d. Abandonment.
>     e. Chronic or toxic exposure to alcohol or controlled substances that causes impairment of or addiction in the juvenile.
>     **f. Any other act, practice, or conduct that increased the enormity or added to the injurious consequences of the abuse or neglect.**
>
> (2) A court of competent jurisdiction terminates or has terminated involuntarily the parental rights of the parent

to another child of the parent.

(3) A court of competent jurisdiction determines or has determined that (i) the parent has committed murder or voluntary manslaughter of another child of the parent; (ii) has aided, abetted, attempted, conspired, or solicited to commit murder or voluntary manslaughter of the child or another child of the parent; **(iii) has committed a felony assault resulting in serious bodily injury to the child or another child of the parent**; (iv) has committed sexual abuse against the child or another child of the parent; or (v) has been required to register as a sex offender on any government-administered registry.

N.C. Gen. Stat. § 7B-901(c) (2023) (emphasis added). Here, in Nora's initial disposition, the trial court ordered DSS to cease reunification efforts under both Sections 7B-901(c)(1)(f) and 7B-901(c)(3)(iii). Specifically, the trial court ordered

3. Pursuant to NCGS 7B-901(c)(1)(f) and 7B-901(c)(3)(iii), the Forsyth County Department of Social Services shall be relieved of reunification efforts with [Mother] and [Father] based upon the aggravated circumstances which exist. The aggravated circumstances include the determination by a court of competent jurisdiction that [Father] and [Mother] have abused [Nan] and inflicted or allowed to be inflicted on her serious bodily injury by other than accidental means and have failed to disclose the manner and cause of [her] injuries. Additionally, [Father] and [Mother] have by their actions and their failure to disclose the manner and cause of [Nan's] injuries have increased the enormity and added to the injurious consequences of the Abuse and Neglect to both of their children, [Nan] and [Nora].

On appeal, neither Mother nor Father specifically challenge any particular findings made by the trial court during initial disposition as being unsupported by the evidence; they argue the trial court essentially did not make *enough* findings to

support its conclusion as to the existence of aggravating circumstances under Section

7B-901, and thus, abused its discretion in ceasing reunification efforts with Nora.

> This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition. An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision.
>
> . . . .
>
> The trial court's findings of fact are conclusive on appeal if supported by any competent evidence, notwithstanding contrary evidence in the record. The trial court's conclusions of law are reviewed de novo.

*In re N.T.*, 289 N.C. App. 149, 152, 888 S.E.2d 231, 234 (2023) (citations and quotation

marks omitted).

Under Section 7B-901(c)(1)(f), our Supreme Court in *In re L.N.H.* noted the

language of "any *other* act, practice, or conduct," *In re L.N.H.*, 382 N.C. at 547-48, 879

S.E.2d at 146 (emphasis in original), implicates a requirement that the actions of the

respondent-parents giving rise to the cessation of reunification must be "in addition

to the facts that rise to the initial disposition of abuse and/or neglect[,]" *id.* at 548,

879 S.E.2d at 146 (citations omitted).  This means the trial court cannot rely on the

same facts to adjudicate a juvenile as abused or neglected as the "other act, practice,

or conduct that increased the enormity or added to the injurious consequences of the

abuse or neglect[]" for purposes of disposition. N.C. Gen. Stat. § 7B-901(c). Here, Parents specifically argue the trial court erred in ceasing reunification efforts during disposition while relying on the same actions of Parents used in adjudicating Nora to be abused and neglected.

The trial court relied heavily on Parents' failure to reveal the cause of Nan's injuries in determining Nora to be an abused and neglected juvenile under a theory of substantial risk of future harm. During the dispositional phase, however, these are the same grounds on which the trial court considers it appropriate to cease reunification efforts under Section 7B-901(c)(1)(f). In the dispositional findings, the only finding supporting this conclusion is Finding 16, which reads: "[Father] also stated that he wants to do the right thing for his girls to be back home with [Mother], so he explained to his attorney what caused the injuries to [Nan]. [Father] advised that he could not share the information with the DSS social worker at that time." Though this finding is separate and distinct from the adjudicatory findings, it still falls into the same realm of which Nora was adjudicated neglected, being a substantial risk of future harm because of Parents' failure to explain how Nora was injured. Put differently, the finding is not an "other" act increasing the enormity or adding to the injurious consequences of the abuse or neglect of Nora, as it is the same basis relied on by the trial court in its initial adjudication of Nora. We vacate the trial court's determination to cease reunification under Section 7B-901(c)(1)(f).

Further, the trial court determined reunification efforts were not required

under Section 7B-901(c)(3)(iii), which allows for the cessation of reunification efforts when a parent "has committed a felony assault resulting in serious bodily injury to the child *or another child of the parent*[.]" N.C. Gen. Stat. § 7B-901(c)(3)(iii) (emphasis added). Mother challenges the cessation of reunification on these grounds, contending the trial court was not a "court of competent jurisdiction" to determine whether a felony assault on a child had occurred. We disagree with this argument and conclude the trial court did not err in ceasing reunification efforts as to both Mother and Father under Section 7B-901(c)(3)(iii).

As correctly noted in Mother's brief on appeal, our North Carolina General Assembly recently amended the language of Section 7B-901(c)(3) in 2018. Before the amendment, the statute allowed for the cessation of reunification efforts when "[a] court of competent jurisdiction *has* determined" a felony assault on a child *had* occurred. *See* N.C. Gen. Stat. § 7B-901(c)(3) (2016) (emphasis added). As this Court noted in *In re G.T.*, "this tense indicates that the determination must have already been made by a trial court—either at a previously-held adjudication hearing or some other hearing in the same juvenile case, or at a collateral proceeding in the trial court." *In re G.T.*, 250 N.C. App. 50, 57, 791 S.E.2d 274, 279 (2016). This Court also held the term "court of competent jurisdiction" supported the proposition that the determination of felony child assault must have been made by a separate tribunal before a court could cease reunification efforts. *See id.* ("Use of this term implies that another tribunal in a collateral proceeding could have made the necessary

determination, so long as it is a court of competent jurisdiction.").

The language was changed in 2018, however, to include that a trial court could cease reunification when a "court of competent jurisdiction *determines* or has determined" a felony assault on a child has occurred. *See* N.C. Gen. Stat. § 7B-901(c)(3) (2018) (emphasis added). The primary effect of this amendment and the changing of language tense is to allow a "court of competent jurisdiction" the present ability to cease reunification based on its determination that a felony child assault had occurred. A court of competent jurisdiction need not wait for a separate or collateral tribunal to determine the occurrence of a felony child assault before ceasing reunification efforts.

Mother contends the trial court here was not a "court of competent jurisdiction" to presently determine the occurrence of a felony child assault in stopping reunification efforts. In advancing this argument, Mother directs us to Section 7B-101 of the Juvenile Code, highlighting this section separately defines a "court" and a "court of competent jurisdiction." As defined within the Juvenile Code, the "court" is a "district court division of the General Court of Justice," but a "court of competent jurisdiction" is "[a] court having the power and authority of law to act at the time of acting over the subject matter of the cause." N.C. Gen. Stat. §§ 7B-101(6)-(7). Mother specifically contends "[a] civil district court exercising jurisdiction pursuant to the Juvenile Code is not a 'court of competent jurisdiction' to adjudicate felonies any more than a criminal superior court exercising criminal jurisdiction pursuant to the

Criminal Code is 'a court of competent jurisdiction' to adjudicate abuse or neglect."

In her brief on appeal, Mother cites to our Supreme Court's decision in *In re L.N.H.*, which addresses the issue of a trial court's ability to cease reunification efforts under Section 7B-901(c)(3)(iii). *See In re L.N.H.*, 382 N.C. at 548, 879 S.E.2d at 147. In that case, our Supreme Court stated:

> In our view, the record developed before the trial court contains ample evidence that tends, if believed, to show that [the] respondent-mother's actions in burning Lea's feet involved the commission of a felonious assault upon the child that resulted in serious bodily injury. Although the trial court did not make the findings necessary to permit the cessation of reunification efforts with [the] respondent-mother based upon N.C.G.S. § 7B-901(c)(3)(iii), it certainly could have done so had it chosen to make such a determination.

*Id*. In presenting this case, Mother argues this statement by our Supreme Court is only dicta as the trial court in that case did not cease reunification efforts under Section 7B-901(c)(3)(iii), and serves only to suggest what the trial court "could have done." We disagree. Though the trial court in that case did not cease reunification under Section 7B-901(c)(3)(iii), specifically, the cessation of reunification efforts was a central issue presented on appeal, and our Supreme Court reviewed the entire record to determine whether competent evidence supported the trial court's conclusions. *See id.* at 546, 879 S.E.2d at 145-46. In reviewing the entire record, our Supreme Court determined there was sufficient evidence to support the cessation of reunification efforts under Section 7B-901(c)(3)(iii) and reversed and remanded to

this Court for further proceedings consistent with the opinion. *See id.* at 549, 879 S.E.2d at 147. This language from the Supreme Court is not dicta as it is necessary to the decision and central to the issues. *See Trustees of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) ("Language in an opinion not necessary to the decision is *obiter dictum* and later decisions are not bound thereby." (citations omitted)).

Based on our Supreme Court's holdings in *In re L.N.H.*, a trial court conducting a juvenile adjudication and disposition for neglect and/or abuse *is* a "court of competent jurisdiction" to weigh the evidence in determining the existence of felony child assault for the purpose of ceasing reunification efforts. Further, the Supreme Court in *In re L.N.H.* specifically used the language "if believed" when discussing the "ample evidence" tending to show the respondent-mother's actions involved felonious assault upon her child and remanded to the trial court to allow it to make additional findings. *See In re L.N.H.*, 382 N.C. at 548, 879 S.E.2d at 147. *In re L.N.H.* supports the intention of the General Assembly's amendment of the Juvenile Code to allow trial courts, in conducting juvenile proceedings, the present ability to determine whether to cease reunification without waiting for the felony assault charges to be adjudicated by a Superior Court. So long as a trial court acting under the Juvenile Code has ample evidence to find by clear, cogent, and convincing evidence the existence of a felony child assault, it may make the appropriate findings of fact and this may serve as grounds to cease reunification under Section 7B-901(c)(3)(iii).

We disagree with Mother's argument the trial court is not a "court of competent jurisdiction" to presently determine the existence of a felony child assault for the sole purpose of ceasing reunification. The trial court's findings of fact support the trial court's cessation of reunification efforts under 7B-901(c)(3)(iii). Similar to the facts presented in *In re L.N.H.*, here, both Mother and Father have been charged with felony child abuse inflicting serious injury due to the severe, unexplained, non-accidental injuries sustained by Nan while in the care of Parents. *See id.* at 538, 879 S.E.2d at 141.

We vacate the trial court's order as it relates to the cessation of reunification efforts under Section 7B-901(c)(1)(f), as the trial court did not make sufficient findings to support the existence of any "other" aggravated circumstances, separate from those relied on by the trial court during the initial adjudication of Nora. Otherwise, the trial court did not err by ordering cessation of reunification efforts as to both Mother and Father under Section 7B-901(c)(3)(iii) because the trial court found the existence of a felonious child assault against Nan.

## IV. Conclusion

We conclude the trial court did not err in adjudicating Nora to be a neglected juvenile and did not err in ceasing reunification efforts as to both Mother and Father under Section 7B-901(c)(3)(iii). We reverse the trial court's adjudication of Nora as an abused juvenile. We also conclude neither Mother nor Father was denied their right to effective assistance of counsel.

AFFIRMED IN PART AND VACATED IN PART.

Judges CARPENTER and STADING concur.